[No. 28705-6-II.   Division Two.   August 3, 2005.]

THE STATE OF WASHINGTON, *Respondent*, v. LONNY CHARLES POLING, *Appellant*.

*Thomas E. Doyle* and *Patricia A. Pethick*, for appellant.

*Edward G. Holm, Prosecuting Attorney*, and *Steven C. Sherman, Deputy*, for respondent.

¶1 HOUGHTON, J. — A jury convicted Lonny Charles Poling of unlawful manufacture of methamphetamine. It also found that the manufacturing took place where a person under the age of 18 was present or was on the manufacturing premises. Poling raises various arguments. We affirm the conviction. Because we agree with Poling that the court's premises definition for the sentence enhancement was too broad and, therefore, misleading, we vacate the sentence enhancement and remand.

## FACTS

¶2 On November 14, 2000, at approximately 9:00 P.M., Deputies Elwin and Hamilton, Lieutenant Watkins, and Detective Snaza arrived at Poling's remote rural property in response to an anonymous citizen tip that Poling had "some sort of manufacturing activity in and around his residence." Report of Proceedings (Dec. 17, 2001) at 14. Poling resided there with Konsuello Vaughn, his girl friend, and the couple's two minor children, ages nine and six.

¶3 Elwin and Snaza parked next to a detached shop, left their vehicles, and stood outside where they could observe the shop and the residence. Hamilton and Watkins contacted Poling and advised him of the reason for their visit.

¶4 During their conversation, Poling admitted that he used methamphetamine occasionally. Hamilton then asked Poling for consent to search his property. Poling agreed and signed a consent to search form.

¶5 While Hamilton and Watkins talked with Poling, Snaza, who stood near the shop, saw two propane tanks next to the shop door. The tanks sat underneath the bed of a white van parked near the shop. Snaza saw aqua blue staining around both propane tank valves. Through his training and experience, Snaza concluded that the staining comported with that of a tank storing anhydrous ammonia or being used as a hydrochloric acid gas generator.

¶6 After signing the consent form, Poling took Hamilton and Watkins through the shop and pointed out numerous

items related to methamphetamine manufacturing.[1] Also, Poling told the officers that he had manufactured methamphetamine on the property approximately five times during the preceding six weeks.

¶7 Hamilton advised Poling of his constitutional rights but did not arrest him. Poling stated that he understood his rights but that he wanted to explain what he was doing on the property.

¶8 Poling then pointed out a white van that had a powdery substance on the front passenger seat floorboard. He also showed Snaza a 125-gallon anhydrous ammonia tank near the van and a chicken coop containing coffee filters, tubing, and a coffee carafe holding a clear substance that smelled strongly of solvents.

¶9 A deputy obtained a telephonic search warrant for the property. Law enforcement officers executed the warrant on November 15. They found numerous items used in the manufacture of methamphetamine.

¶10 By first amended information, the State charged Poling with unlawful manufacture of a controlled substance (methamphetamine).[2] The State also alleged that Poling committed the crime while a minor was present or while a minor was on the manufacturing premises.[3]

¶11 Poling moved to suppress the evidence seized in the search. He argued that the police unlawfully entered his property on November 14, rendering the evidence seized under a search warrant based on the unlawful entry fruits of the poisonous tree. He also moved to suppress his statements on similar grounds.

---

[1] The items included an anhydrous tank, a two-gallon oxygen tank, hoses, another propane tank that Poling said he used for gassing out his methamphetamine, muriatic acid, a small carafe in the front passenger seat of the van containing a white powdery substance used and extracted from pseudoephedrine tablets, a propane tank buried in the hay next to the van, a coffee carafe containing a clear substance used in gassing out methamphetamine, and a burn barrel used to incinerate methamphetamine manufacturing waste.

[2] A violation of former RCW 69.50.401(a)(1)(ii) (2000).

[3] A violation of former RCW 9.94A.128 (2000).

¶12 Poling's and the officers' testimony differed as to whether the officers knocked on the porch door and were invited to come in, or whether they entered the screened porch before Poling knew of their arrival. Also, it was unclear whether the police could have seen the "No Trespassing" sign posted at the entry to Poling's property. Finally, Poling's, Vaughn's, and the officers' testimony conflicted as to whether the officers read the contents of the consent to search form to Poling and whether Poling understood it.

¶13 The trial court found the officers' testimony credible and accepted it in its entirety. It then determined that the police entered Poling's property as any reasonably respectful citizen would.

¶14 It also determined that Poling freely and voluntarily consented to a search of the premises after being fully advised. Finally, it decided that the police properly advised Poling of his constitutional rights before he waived them and made his incriminating statements. The trial court denied Poling's motions to suppress.

¶15 At trial, Hamilton and Snaza testified as described above. Also, over defense objection, Snaza testified about the street value of one gram and one ounce of methamphetamine.

¶16 Kimberly Hefton, a forensic scientist of the Washington State Patrol Crime Laboratory, explained methamphetamine manufacturing to the jury. According to her, the items seized at the scene were consistent with that activity.

¶17 The State proposed an instruction based on 11A *Washington Pattern Jury Instructions: Criminal* 65.01, at 32 (2d ed. 1994) (WPIC), the "premises" definition used for burglary charges.[4] Poling objected, arguing that a definitional instruction was unnecessary and essentially would confuse the jury.

---

[4] The WPIC derives from RCW 9A.52.010(1), the "premises" definition for the crimes of burglary and trespass.

¶18 The trial court gave the State's proposed instruction. It read: "The term premises includes any building, dwelling, or any real property." Clerk's Papers at 80.

¶19 The jury found Poling guilty as charged, including finding the enhancement based on minors being present. The trial court imposed a Special Drug Offender Sentencing Alternative sentence and an additional 24 months based on the special verdict enhancement.

¶20 Poling appeals.

## ANALYSIS

### Suppression Motions

¶21 Poling first contends that the police originally entered his property unlawfully. Therefore, he argues that the trial court erred in denying his motion to suppress all evidence seized, including his incriminating statements, because it was based on the illegal entry. We disagree.

¶22 The Fourth Amendment, made applicable to the states by way of the Fourteenth Amendment, and article I, section 7 of the Washington Constitution render warrantless searches per se illegal unless they come within one of the narrow exceptions to the warrant requirement. *State v. Rankin*, 151 Wn.2d 689, 695, 92 P.3d 202 (2004). The State bears the burden of proving valid a warrantless search under a recognized exception to the warrant requirement. *State v. Johnson*, 128 Wn.2d 431, 447, 451, 909 P.2d 293 (1996).

¶23 Exceptions to the warrant requirement include consent, exigent circumstances, search incident to a valid arrest, inventory search, plain view, and investigative stops. *State v. Hendrickson*, 129 Wn.2d 61, 71, 917 P.2d 563 (1996). Information obtained through an unconstitutional search may not be used in an affidavit of probable cause for a search warrant. *State v. Ross*, 141 Wn.2d 304, 311-12, 4 P.3d 130 (2000).

¶24 As a prerequisite to asserting an unconstitutional invasion of rights, a person must demonstrate that he had a legitimate expectation of privacy in the area or item searched. *State v. Goucher*, 124 Wn.2d 778, 787, 881 P.2d 210 (1994). The courts view a person's home as the area most strongly protected by the constitution. *Ross*, 141 Wn.2d at 312. Although residents maintain an expectation of privacy in the curtilage, or area contiguous with a home, "police with legitimate business may enter areas of the curtilage which are impliedly open, such as access routes to the house," so long as they do so as would a "reasonably respectful citizen." *State v. Seagull*, 95 Wn.2d 898, 902, 632 P.2d 44 (1981) (footnote omitted).

¶25 The court heard varying accounts of the November 14 events. It found the officers' testimony credible and accepted it in its entirety. We defer to the fact finder on issues of conflicting testimony, credibility of witnesses, and persuasiveness of the evidence. *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533, *review denied*, 119 Wn.2d 1011 (1992).

¶26 Engaged in proper police activity, the officers arrived at the residence to investigate a tip that Poling manufactured methamphetamine on his property. Although the police officers arrived at 9:00 P.M., Poling left the gate open because he expected a visit from his friend at the same hour and the police officers entered Poling's property through that open gate. The trial court found that this arrival did not differ from an arrival of Poling's friend or another reasonably respectful citizen.

¶27 Based on the officers' testimony and Poling's signed consent to search form, the court further determined that Poling consented to the search of his property and that he gave his statement after being fully advised. Because the police entry onto Poling's property was proper, the evidence, including Poling's statements, was lawfully obtained.

## Sufficiency of the Evidence

¶28 Poling further contends that the State failed to present sufficient evidence that he manufactured methamphetamine. We disagree.

■ ¶29 When evaluating the sufficiency of the evidence for a criminal conviction, we view the evidence in the light most favorable to the State and determine whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *State v. Pirtle*, 127 Wn.2d 628, 643, 904 P.2d 245 (1995), *cert. denied*, 518 U.S. 1026 (1996). We draw all reasonable inferences in favor of the State and interpret the evidence most strongly against the defendant. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

■ ¶30 RCW 69.50.101(p) defines the manufacture of controlled substance, in part:

"Manufacture" means the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly or by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis.

Because manufacturing is often an ongoing process involving many steps, a defendant need not possess the final product in order to meet the statutory requirements of RCW 69.50.101(p). *State v. Davis*, 117 Wn. App. 702, 708, 72 P.3d 1134 (2003), *review denied*, 151 Wn.2d 1007 (2004). Thus, "a person who knowingly plays even a limited role in the manufacturing process is guilty, even if someone else completes the process." *Davis*, 117 Wn. App. at 708.

■ ¶31 The search of the shop, the van, and the chicken coop resulted in seizure of devices and items consistent with the manufacture of methamphetamine and byproducts of its production. This evidence showed not only past, but also active methamphetamine manufacture.

¶32 Moreover, Poling also admitted to the police that he had manufactured methamphetamine five times before the

police discovered the lab on his property. Thus, the State presented sufficient evidence from which a rational fact finder could find beyond a reasonable doubt that Poling manufactured methamphetamine.[5]

## Jury Instruction Defining "Premises"

¶33 Poling further contends that the trial court erred in instructing the jury on the definition of "premises." He asserts that giving this instruction prevented him from arguing his theory of the case that the children were not present where manufacturing took place. We agree.

¶34 The law entitles a defendant to have his theory of the case submitted to the jury under appropriate instructions. *State v. Finley*, 97 Wn. App. 129, 134, 982 P.2d 681 (1999), *review denied*, 139 Wn.2d 1027 (2000). We review de novo the alleged errors of law in instructing the jury. *State v. Winings*, 126 Wn. App. 75, 86, 107 P.3d 141 (2005).

¶35 We view jury instructions as appropriate when they "allow the parties to argue their theories of the case, and when read as a whole properly inform the jury of the applicable law." *State v. Clausing*, 147 Wn.2d 620, 626, 56 P.3d 550 (2002). A proper jury instruction "states the law, is not misleading, and permits counsel to argue his theory of the case." *State v. Mark*, 94 Wn.2d 520, 526, 618 P.2d 73 (1980). A trial court is required to define technical words and expressions used in jury instructions but need not define words and expressions that are of ordinary understanding or self-explanatory. *State v. Brown*, 132 Wn.2d 529, 611-12, 940 P.2d 546 (1997), *cert. denied*, 523 U.S. 1007 (1998).

¶36 Although RCW 9A.52.010(1) defines "premises," Poling correctly argues that the instruction defining this term was misleading in that it implied that being

---

[5] Poling contends that the State failed to prove that the manufacture took place on November 14, 2000. But the State charged Poling with manufacturing methamphetamine on or *about* November 14, 2000. Thus, Poling's argument fails.

anywhere on his property is the same as being present on the manufacturing premises. Such a definition was not necessary here and further it does not comport with the enhancement elements.

¶37 By instructing the jury that "premises" includes any building, dwelling, or real property, the trial court removed from the jury the requirement to find that the children were present at the manufacturing location, as contrasted with children being present but removed from the actual manufacturing process. We hold that this overly broad instruction could mislead the jury.[6] The trial court erred in giving it. The remedy is to vacate the sentence enhancement and remand.[7] On remand, the State may elect to retry the sentence enhancement using proper jury instructions or to seek a sentence without the enhancement.

Evidence of Street Value of Methamphetamine

¶38 Poling finally contends that the trial court erred in allowing Snaza to testify as to the street value of methamphetamine, over objection, because it was not relevant to the charge. He asserts that evidence about the amount manufactured and its street value had "nothing to do with when the manufacturing took place or whether the children were present." Appellant's Br. at 34.

¶39 We review evidentiary rulings for abuse of discretion. *State v. Lane*, 125 Wn.2d 825, 831, 889 P.2d 929 (1995); *State v. Swan*, 114 Wn.2d 613, 658, 790 P.2d 610 (1990), *cert. denied*, 498 U.S. 1046 (1991). A court abuses its discretion when it bases its ruling on untenable grounds or

[6] We do not address Poling's arguments based on instructional ambiguity and improper comment on the evidence. We also do not address his argument based on ineffective assistance of counsel for failing to properly preserve this error on appeal because counsel did preserve it for our review.

[7] Poling argues that there was insufficient evidence that the children were present. If true, the remedy would be to reverse and dismiss. *State v. Turner*, 103 Wn. App. 515, 520, 13 P.3d 234 (2000) (insufficiency of evidence mandates dismissal with prejudice). This argument fails because the evidence established that the children were, at least, in the house.

reasons. *State v. Downing*, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004).

¶40 Counsel objected only on relevance grounds. Relevant evidence has the tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be absent the evidence. ER 401.

¶41 Here, the trial court admitted Snaza's testimony as to methamphetamine's street value. It was relevant because it showed an ongoing operation—an element the State had to prove. The trial court did not err in admitting the evidence.

¶42 The conviction is affirmed. The sentence enhancement is vacated and the matter remanded.[8]

MORGAN, A.C.J., and ARMSTRONG, J., concur.

---

[8] Because we vacate the sentence enhancement and remand, we do not address Poling's argument on the length of the sentence enhancement.