135 P.3d 530 (2006)
133 Wash.App. 130
Janyce HARRIS, a single woman, Respondent,
v.
Robert URELL and Tina Urell, a married couple, Appellant.
No. 33592-1-II.
Court of Appeals of Washington, Division 2.
May 23, 2006.
*531 Philip A. Foster, Vancouver, WA, for Appellant.
Robert Urell, Washougal, WA, pro se, Appellant.
Steven Erik Turner, Miller Nash LLP, Vancouver, WA, for Respondent.

OPINION PUBLISHED IN PART
HUNT, J.
¶ 1 Robert and Tina Urell appeal the trial court's order quieting title in Janyce Harris by adverse possession of a disputed driveway on their titled property. The Urells argue that (1) Harris did not gain title through adverse possession, and (2) even if Harris did gain title, they had regained title through "good faith color of title" adverse possession. We affirm.

FACTS

I. THE DISPUTED PROPERTY
¶ 2 Janyce Harris and Robert and Tina Urell own adjacent residential lots. Since 1965, Harris has used and maintained a gravel driveway on the Urells' titled property. Between 1988 and 1997, after obtaining Harris's permission, the Urells' predecessors used part of the driveway daily.
*532 ¶ 3 This driveway comprises three parts: (1) the lower driveway, which runs west from the road, then southwest to a shed; (2) the upper driveway, which forks northwest from the original driveway, then runs south toward Harris's house; and (3) the northern driveway, which forks from the middle of the upper driveway toward the Urells' house to the north. It is undisputed that the Urells own the third, northern part of driveway. In dispute is ownership of the first and second parts of the driveway and the surrounding land, which also lies on the Urells' titled property.[1]

A. Harris's Use
¶ 4 Janyce Harris purchased her residential property in 1960.[2] At first, she and her family lived in a small house on her titled property. They accessed the home by a pre-existing, east-west driveway on the Urells' predecessors' titled property ("lower driveway").
¶ 5 In 1965, Harris began building a larger house, located farther west than her original house. She created a northwestern fork from the lower driveway to the building site by leveling the area and laying down gravel ("upper driveway"). Between 1965 and 2001, Harris used this upper driveway to access her new house. Harris put new gravel on the upper driveway and occasionally placed rocks in potholes. Sometime after 1968 Kip Aslin felled a tree in or near the disputed property.[3]

B. The Watts' and the Urells' Use
¶ 6 Mike and Jill Watts lived on the property adjacent to and north of Harris's property before they sold it to their daughter and son-in-law, Robert and Tina Urell. Before 1988, the Watts did not use the disputed driveway. Instead, they accessed the property from a separate driveway north of their house.
¶ 7 In 1988, the Watts began construction on their property. Mike Watts asked Harris for permission to access the lower driveway and part of the upper driveway so he could haul gravel and building materials up a northbound logging road, which spanned an undisputed portion of his property. Harris granted permission.
¶ 8 Shortly thereafter, Watts asked Harris if he could make the route permanent. He offered to maintain a portion of the driveway in exchange for her allowing him access to that portion. Harris agreed. Watts then created the northern driveway. Thereafter, the Watts regularly used the lower driveway, part of the upper driveway, and the northern driveway to access their house.
¶ 9 In August 1997, the Urells purchased the Watts' property. Beginning around 2001, the Urells planted a garden on the disputed strip. Their children often played in the forested area south of the upper driveway. Also in 2001, Robert Urell gave Harris a note telling her that the driveway was located on the Urells' property and that she must stop using the upper driveway. The next week, Robert Urell placed a barricade and a "no trespassing" sign on the upper driveway, forcing Harris to walk about 70 feet down a slope to reach her home.[4]

II. PROCEDURE
¶ 10 Harris sued for trespass and to quiet title to the driveway through adverse possession. She claimed that she had gained title by adverse possession or, if she had not, she *533 had obtained a prescriptive easement for ingress and egress across the driveway.
¶ 11 The Urells denied Harris's claims and counterclaimed, asserting that (1) if Harris had title to the driveway through adverse possession, the Urells had regained title through adverse possession under "good faith color of title," RCW 7.28.070; and (2) the statute of limitations and the doctrines of laches and estoppel barred Harris's claim.
¶ 12 The trial court granted Harris's request for a preliminary injunction, ordering the Urells to remove the barriers from the driveway. After a bench trial, the court quieted title in Harris. The court ruled that (1) Harris had adversely possessed the entire disputed area and gained title in 1975; and (2) the Urells had not regained title through adverse possession or on any other basis.
¶ 13 The Urells appeal.

ANALYSIS

I. ADVERSE POSSESSION
¶ 14 The Urells first argue that the trial court erred when it held that Harris gained title to the driveway through adverse possession. Harris counters that (1) the Urells' failure to assign error to several findings of facts makes them verities on appeal; and (2) the trial court did not err. We agree with Harris and the trial court.

A. Standard of Review
¶ 15 To establish a claim of adverse possession, a party must show that her possession of the claimed property was, (1) for ten years, (2) exclusive, (3) actual and uninterrupted, (4) open and notorious, and (5) hostile. Chaplin v. Sanders, 100 Wash.2d 853, 857, 676 P.2d 431 (1984); RCW 4.16.020. But if a claimant has held the claimed property for seven years under a "good faith color of title" and has paid all taxes on the disputed property,[5] he need only prove "actual, open and notorious possession" for those seven years. RCW 7.28.070. The party claiming adverse possession bears the burden of establishing the existence of each element. ITT Rayonier, Inc. v. Bell, 112 Wash.2d 754, 757, 774 P.2d 6 (1989).
¶ 16 The trial court's findings on the elements of adverse possession are mixed questions of law and fact. Petersen v. Port of Seattle, 94 Wash.2d 479, 485, 618 P.2d 67 (1980). We review whether substantial evidence supports the trial court's challenged findings and, if so, whether the findings in turn support the trial court's conclusions of law and judgment. Ridgeview Prop. v. Starbuck, 96 Wash.2d 716, 719, 638 P.2d 1231 (1982). Substantial evidence exists when there is a sufficient quantity of evidence to persuade a fair-minded, rational person of the truth of the finding. State v. Hill, 123 Wash.2d 641, 644, 870 P.2d 313 (1994).
¶ 17 Ordinarily, we treat unchallenged findings of fact as verities on appeal.[6] The Urells do not assign error to any of the trial court's findings of fact. In the "Assignments of Error" section of their opening Brief of Appellant, they assert only that "[t]he trial court erred in its finding of the plaintiff's adverse possession and in quieting title in plaintiff," Appellant's Opening Br. at 3, which appears to reference the trial court's conclusion of law.
¶ 18 In appropriate circumstances, we will waive technical violations of RAP 10.3(g), especially, where, as here, the appellant's brief makes the nature of the challenge clear and includes the challenged findings in the text. Daughtry v. Jet Aeration Co., 91 Wash.2d 704, 709-10, 592 P.2d 631 (1979); RAP 1.2(a). The Urells, appearing pro se, explain in their Reply Brief that their failure to assign error to the findings of fact in their opening brief was in good faith. They argue that because their arguments clearly establish the nature of their challenges, the circumstances justify waiving RAP 10.3(g)'s *534 technical requirement that they must assign error to each challenged finding of fact.
¶ 19 Under these circumstances, we accept the Urells' request and, therefore, with one exception, we do not treat the trial court's unchallenged findings as verities on appeal. We will, however, treat as verities on appeal those portions of the trial court's Findings of Fact 1.7-1.9 that support the adverse possession element of "actual" use because the Urells do not address these facts or this issue in their briefs.

B. Harris's Adverse Possession Claim
¶ 20 The Urells argue that Harris's use of the driveway was neither exclusive nor uninterrupted because her northern neighbors occasionally entered the disputed property to fell a tree or to walk across the property. This argument fails.

1. Exclusivity
¶ 21 Adverse possession must be as exclusive as one would expect of a titled property owner under the circumstances. Crites v. Koch, 49 Wash.App. 171, 174, 741 P.2d 1005 (1987). Nonetheless, an occasional, transitory use by the true owner usually will not prevent ownership transfer by adverse possession if the adverse possessor permits the use as a "neighborly accommodation." Lilly v. Lynch, 88 Wash.App. 306, 313, 945 P.2d 727 (1997). Felling one tree is such an occasional, transitory use. Moreover, Harris testified that (1) the felled tree was located north of the disputed property; and (2) her northern neighbors engaged in no activities on the disputed property for 20 years.
¶ 22 Evidently believing Harris, the trial court did not find that the true owners had engaged in any activity on the disputed property during the statutory period. Because we defer to the trial court on issues of witness credibility, conflicting testimony, and persuasiveness of the evidence, we do not question the trial court's acceptance of Harris's veracity on these facts. State v. Poling, 128 Wash.App. 659, 667, 116 P.3d 1054 (2005).
¶ 23 Harris's testimony presents sufficient evidence to support the trial court's findings of fact that, for at least ten years, she and her family members maintained the lower driveway (Finding of Fact 1.7), the upper driveway, and the nearby clearing (Finding of Fact 1.9) "at their exclusive expense and for their exclusive use." Clerk's Papers (CP) at 157. These findings, in turn, support the trial court's conclusion of law that (1) Harris's "use of the disputed property has been consistent with her exercise of ownership and dominion over the disputed property" (Conclusion of Law 2.2); and (2) thus, her use satisfied every element of her adverse possession claim, including exclusivity. (Conclusion of Law 2.5); CP at 159.

2. Hostility
¶ 24 The Urells next contend that Harris's use of the driveway was permissive, not hostile. To satisfy the element of hostility, the claimant, Harris, had to prove that she treated the land as her own against the world throughout the statutory period, from 1960 to 1970 for the lower driveway, and from 1965 to 1975 for the upper driveway. See Chaplin, 100 Wash.2d at 860, 676 P.2d 431. A claimant's use is not hostile, however, if the true owner granted the claimant permission to occupy the land. See Chaplin, 100 Wash.2d at 860, 676 P.2d 431. Such was not the case here.
¶ 25 The Urells argue primarily that Harris's use was not hostile because the land was unimproved and "[w]here the land is vacant, open, unenclosed, and unimproved, use is presumed permissive." Appellant's Opening Br. at 9 (citing Standing Rock Homeowners Ass'n v. Misich, 106 Wash.App. 231, 239, 23 P.3d 520, review denied, 145 Wash.2d 1008, 37 P.3d 290 (2001)). But the record shows that the disputed land was improved: Harris built a gravel driveway on it and cleared several areas. Thus, contrary to the Urells' contention, Harris's use was not presumptively permissive.
¶ 26 Further, substantial evidence supports the trial court's finding that Harris's use of the driveway was hostile. Between 1965 and 1975, Harris treated the land as her own against the world: She built and maintained *535 a gravel driveway, cleared several areas, and traveled daily across the disputed property. She allowed no one except her family and invited guests onto the property.
¶ 27 In contrast, the record does not support the Urells' claim that the true owners granted Harris permission to use the disputed property. Harris's neighbor from 1964-1968, Jack Hentges, testified that he used his property only for cattle grazing, and he did not interact in any way with Harris. Harris's neighbor between 1968-1988, Kip Aslin, testified only that he "understood" Harris had used the disputed property with his permission. A true owner's subjective thought process, however, does not constitute a grant of permission. See Chaplin, 100 Wash.2d at 860, 676 P.2d 431. Thus, Aslin's testimony does not diminish support for the trial court's finding that Harris's use of the property was hostile, rather than permissive.
¶ 28 Substantial evidence supports the trial court's findings of fact 1.7-1.9, in which the court found that Harris built the upper driveway and used and maintained the disputed property exclusively at her expense. These findings, in turn, support the trial court's conclusions of law that (1) Harris used the disputed property in a manner consistent with her exercise of ownership and dominion over it; (2) the true owners did not grant Harris express or implied permission to use the disputed property during the statutory period; and (3) Harris's use satisfied the elements of adverse possession.

C. The Urells' Adverse Possession Claim
¶ 29 The Urells next argue that the trial court erred in denying their counterclaim that they regained "good faith color of title" to the disputed property by adverse possession under RCW 7.28.070.[7] This argument similarly fails.

1. Open and notorious
¶ 30 To prevail under RCW 7.28.070, a claimant must prove, among other things, that he possessed the land in an "open and notorious" manner. The adverse possession claimant meets this open and notorious requirement if he shows that (1) the true owner had actual notice of the adverse use throughout the statutory period, or (2) the claimant used the land so that any reasonable person would assume that the claimant is the owner. Anderson v. Hudak, 80 Wash.App. 398, 404-05, 907 P.2d 305 (1995) (citing Chaplin, 100 Wash.2d at 863, 676 P.2d 431). In other words, the claimant must show that the true owner knew, or should have known, that the claimant's occupancy constituted an ownership claim. Anderson, 80 Wash.App. at 405, 907 P.2d 305. The Urells did not satisfy their burden of proof in this regard.
¶ 31 The trial court concluded that the Urells had not reestablished title through adverse possession. It entered Finding of Fact 1.13:
After Mr. and Mrs. Watts purchased their property[,] . . . they requested permission from Mrs. Harris to access their property from the original driveway. Plaintiff granted this permission. Accordingly, the Watts built a new extension off of the northern edge of the driveway to access their house.
CP at 158. The trial court based this finding on substantial evidence: Harris testified that (1) Watts had asked her permission first to use her driveway and later to build the northern driveway; and (2) in exchange for Harris's permission to use the driveway, Watts had agreed to maintain the portion of the driveway he and his family used.[8]

2. Permissive use
¶ 32 The pivotal issue, then, is whether the Watts' use was "open and notorious" under *536 RCW 7.28.050 when Mike Watts first asked for and obtained Harris's permission to use the disputed property (after she had gained ownership by adverse possession). Although Washington courts have not squarely addressed this issue,[9] we have previously suggested that the answer would be, "No." See Anderson, 80 Wash.App. at 404-05, 907 P.2d 305.
¶ 33 Although Harris had actual notice that the Watts had used the disputed property during the statutory seven-year adverse-possession period, she had no notice that their use was adverse. On the contrary, she had notice only that their use was not adverse because they had repeatedly asked and received her permission to use the driveway. Consequently, Harris reasonably believed she had established a friendly, neighborly agreement with the Watts in which they acknowledged that they held no claim of ownership over the disputed property and, instead, acknowledged her ownership of the property, as evidenced by their seeking her permission to use the property.
¶ 34 Therefore, between 1988 and 1997, the Watts' permissive use of the disputed property was insufficient to put Harris on notice that their "occupancy" constituted an ownership claim on the driveway. Because the Urells failed to show that neither they nor their predecessors, the Watts, had used the disputed property such that any reasonable person would have thought that they owned the property, their use was not "open and notorious." See Anderson, 80 Wash.App. at 404-05, 907 P.2d 305. We hold that the Urells', and their predecessors', permissive use of the disputed property defeated the "open and notorious" element of adverse possession. Accordingly, the Urells' adverse possession counterclaim fails.[10]
¶ 35 Affirmed.
¶ 36 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: BRIDGEWATER, J., and VAN DEREN, A.C.J.
NOTES
[1] For ease of reference, we use the term "driveway" for the disputed property. More specifically, the disputed property comprises a strip of land along the majority of the border between Harris's southern lot and the Urells' northern lot, about 350 feet long, ranging from several feet to roughly 75 feet in width. It contains a forested area, clearings, Harris's back yard, and part of a shed that Harris uses as a garage.
[2] Since Harris moved onto her property, she has had five different neighbors on the property abutting to the north, four of whom are known and who testified at the trial: (1) Jack Hentges, owner from 1964-1968, (2) Kip Aslin, owner from 1968-1988, (3) Mike and Jill Watts, owners from 1988-1997, and (4) Robert and Tina Urell, owners from 1997 to the present.
[3] The Urells contend that the tree was felled in 1968, but there is nothing in the record to indicate the exact year.
[4] Harris is now an 84-year-old woman recovering from cancer.
[5] Mrs. Urell testified that she and her husband paid taxes on the property, a fact that Harris does not dispute.
[6] RAP 10.3(g) (mandating that, in the brief's "assignment of error" section, an appellant pinpoint the findings of fact that the trial court allegedly entered erroneously); Hill, 123 Wash.2d at 644, 870 P.2d 313; Henderson Homes v. City of Bothell, 124 Wash.2d 240, 244, 877 P.2d 176 (1994).
[7] The Urells also initially assigned error to the trial court's denial of their RCW 7.28.050 adverse possession claim, but then conceded this was a clerical error and that statute does not apply.
[8] According to the record, Watts testified he actually gave Harris permission to use the driveway. But the trial court resolved this conflicting testimony in Harris's favor, finding that she had granted to Watts permission to access the disputed property. Since we defer to the trial court on issues of conflicting testimony, credibility of witnesses, and persuasiveness of the evidence, Poling, 128 Wash.App. at 667, 116 P.3d 1054, we do not revisit this issue.
[9] Permissive use clearly defeats the element of "hostility." Therefore, courts engaging in a traditional adverse possession analysis focus on this element when the true owner granted permission. See, e.g., Chaplin, 100 Wash.2d at 860-61, 676 P.2d 431. But hostility is not required under RCW 7.28.070, and we have found no published opinion addressing whether permissive use also defeats the "open and notorious" element.
[10] We do not address whether Harris's permission for the Watts to use the driveway transferred to the Urells when they purchased the property from the Watts in October 1997. Harris sued to quiet title in August 2003, and the trial court enjoined the Urells in October 2003. The Urells' use, even if open and notorious, lasted less than the seven years required to establish adverse possession.