# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ELSADIG AHMED, an individual,<br><br>                    Appellant,<br><br>          v.<br><br>GLACIER FISH COMPANY, LLC, a<br>Washington business entity,<br><br>                    Respondent. | No. 73032-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: March 7, 2016 |

2016 MAR -7 AM 9: 39
COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

APPELWICK, J. — Ahmed was injured while working for Glacier Fish Company, his former employer. Ahmed sued Glacier alleging violations of the Jones Act, 46 U.S.C. § 30104. The trial court dismissed Ahmed's lawsuit. We affirm.

## FACTS

Elsadig Ahmed immigrated to the United States from Darfur, Sudan. In 2010, Ahmed went to Alaska to work for Glacier Fish Company. In June 2010, Ahmed was working as a fish processor on one of Glacier's vessels.

On June 23, 2010, while the vessel was docked, Ahmed was working in the vessel's freezer hold where boxes of processed fish are stacked and stored before they are unloaded at the dock. After working several hours in the freezer, Ahmed complained to the shift supervisor about pain and numbness in his fingers. The

supervisor told Ahmed to go see the ship's medical officer. The medical officer, Jeff Ivie, examined Ahmed's hands, observed blood circulation in his fingers, and saw no signs of frost bite. Ivie gave Ahmed ibuprofen for pain and inflammation. And, he instructed Ahmed not to work in the freezer and instead to work on the pier. But, according to Ahmed, after working several hours on the pier, Marcus Vercruysse, the new shift supervisor, ordered Ahmed to return to the freezer.

On June 30, 2010, Ahmed again complained about his hands to a different medic. The complaint was recorded in the ship's medical log and the complaint was reported to two supervisors.

On July 16, 2010, again while the vessel was docked, Ahmed made a third complaint about his hands. Ivie drove Ahmed to a clinic. The clinic diagnosed Ahmed with " 'frostbite to fingertips.' " Ahmed did not return to the vessel for the rest of the 2010 season. But, he continued to seek treatment for his hands. Ahmed visited U.S. Healthworks in Seattle. On October 13, 2010, the treating physician informed Ahmed that he could return to work.

Ahmed then worked for Glacier in 2011 and 2012 as a candler, removing bones and other defects from fish on an assembly line. Next, Ahmed worked at a shipyard in June 2012. As a result of this work, Ahmed began to suffer from carpal tunnel syndrome in both wrists. Glacier paid for Ahmed's carpal tunnel medical treatments, and Ahmed reached maximum cure for the syndrome.

On June 19, 2013, Ahmed filed a lawsuit against Glacier for his injuries, alleging negligence and unseaworthiness under the Jones Act and general

2

maritime law. On December 8, 2014, the matter proceeded to a bench trial. At trial, Ahmed testified and called five other witnesses. Due to a lack of evidence, the trial court dismissed Ahmed's unseaworthiness claim after the conclusion of his case. Glacier then called seven witnesses to testify.

On December 29, 2014, the trial court entered findings of fact, conclusions of law, and an order dismissing Ahmed's remaining negligence claim under the Jones Act. The trial court concluded that Ahmed did not carry his burden of proving that Glacier acted negligently.

On January 27, 2015, Ahmed filed a notice of appeal. His notice of appeal noted that he, "seeks review by the designated appellate court of Findings of Fact." In Section A of his notice of appeal, Ahmed listed the witnesses who testified at trial. Section B was entitled "Findings of Fact" and read, "2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 13, 14." Section C was entitled "conclusions of law" and read, "1, 2, 3, 4, 5, 6, 7, 8, 9." Ahmed also attached a signed document that read as follows:

1. My lawyer was not representing me well in front of the court[.]

2. [M]y lawyer refused to call all the witnesses I work with in the freezer hold only one and did not call him to come in the court.

3. [M]y lawyer did not provide me a translator and used defendant's interpreter.

4. My lawyer called Jeff Ivie as a witness and never was I told about him. I only saw his name on the court decision as my witness.

5. I still have problem for frostbites on my fingers and carpal tunnel pain and numbness.

## DISCUSSION

Ahmed's opening brief to this court is a verbatim copy of his trial brief submitted below. While Ahmed's opening brief makes arguments and provides legal authority supporting his negligence allegations against Glacier, it does not identify any errors made by the trial court in reaching its decision. RAP 10.3(a)(4) states that an appellant's brief should contain a separate concise statement of each error a party contends was made by the trial court, together with the issues pertaining to the assignments of error. And, RAP 10.3(g) requires an appellant to make a separate assignment of error for each finding of fact he or she contends was improperly made with references to the finding by number. This court will only review a claimed error, which is included in an assignment of error or disclosed in the associated issue. Id. But, in appropriate circumstances, this court will waive technical violations of RAP 10.3(g) where the appellant's brief makes the nature of the challenge clear and includes the challenged findings in the text. Harris v. Urell, 133 Wn. App. 130, 137, 135 P.3d 530 (2006).

Here, Ahmed identified findings of fact by number in his notice of appeal, but he did not indicate why he was challenging those findings. And, there are no assignments of error in either his opening brief or his reply brief. Ahmed does, however, appear to challenge one finding of fact and a related conclusion of law in his reply brief. Specifically, Ahmed challenges the trial court's finding that he failed to prove that Vercruysse ordered him to go back to the freezer after Ivie had instructed him not to work there. And, he challenges the trial court's conclusion of

4

law that Glacier did not act negligently under the Jones Act with respect to any preinjury training or post-injury practices.

In a bench trial where the court has weighed the evidence, this court's review is limited to determining whether substantial evidence supports the trial court's findings of fact and whether the findings of fact support the trial court's conclusions of law.[1] Day v. Santorsola, 118 Wn. App. 746, 755, 76 P.2d 1190 (2003). The unchallenged findings of fact are verities on appeal. Moreman v. Butcher, 126 Wn.2d 36, 39, 891 P.2d 725 (1995).

Both parties admitted evidence at trial about the encounter between Ahmed and Vercruysse. At trial, Ahmed testified that after Ivie instructed him to work on the pier instead of in the freezer, Vercruysse, a supervisor who had just come on shift, ordered Ahmed to return to the freezer. In support of his assertion, Ahmed submitted the deposition testimony of Yatte Dioumassy, another processor on the vessel. At trial, Vercruysse testified for Glacier. Vercruysse testified that he never told Ahmed that he needed to go back into the freezer hold after he had been medically examined. He further testified that when one of the mates or the captains makes an assessment that a person should not perform a particular job, he does

---

[1] An issue raised and argued for the first time in a reply brief is too late to warrant consideration. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). But, it is in the discretion of an appellate court to decide an issue regardless of which brief addresses it. Boyd v. Davis, 127 Wn.2d 256, 265, 897 P.2d 1239 (1995). We choose to exercise our discretion and consider Ahmed's challenge to the finding of fact and conclusion of law noted in his reply brief.

not defy their orders. And, Wes Tabaka, at the time a "freezer boss"[2] on Glacier's ship, testified that he did not recall working with Ahmed in the freezer hold, but remembered working with him out on the docks.

After reviewing this evidence, the trial court noted that Dioumassy's deposition testimony stated that Dioumassy saw Ahmed in the freezer and that Ahmed said the foreman asked him to go there.[3] Notwithstanding this testimony, the trial court found that Dioumassy's deposition testimony lacked specificity as to the date and time of when Dioumassy saw Ahmed in the freezer hold such that his testimony did not necessarily rebut Vercruysse's account. Consequently, the trial court found that Ahmed did not meet his burden of proof on that issue.

On appeal, Ahmed again relies on Dioumassy's testimony. And, Ahmed contends that if the attorneys had specifically asked Dioumassy about the date and time of his encounter with Ahmed in the freezer, Dioumassy would have been able to answer, confirming Ahmed's account of the events. To the extent Ahmed is arguing that the trial court's finding is unsupported by substantial evidence because Dioumassy's deposition testimony calls Vercuysse's testimony into question, we cannot review that argument. See Morse v. Antonellis, 149 Wn.2d 572, 574, 70 P.3d 125 (2003) (noting that credibility determinations are solely for the trier of fact and cannot be reviewed on appeal).

---

[2] A freezer boss makes sure that everything is running smoothly so that the factory can keep running efficiently. Freezer bosses go through additional safety training and have responsibilities regarding overseeing the crew's safety.

[3] Excerpts of Dioumassy's deposition are in the record, but the portion of the deposition referenced by the trial court—page 20—is not in the record.

Vercuysse testified that he did not order Ahmed to return to the freezer. Tabaka testified that he did not work with Ahmed in the freezer. Apparently, the trial court was unpersuaded that this testimony was not credible. We conclude that substantial evidence supports the trial court's finding of fact that Ahmed failed to prove that Vercuysse ordered him to return to the freezer after he was treated by Ivie.[4] And, to the extent Ahmed is arguing that his attorney was ineffective by not asking Dioumassy the appropriate follow-up questions during his deposition, this lawsuit is not the appropriate forum to raise the efficacy of his legal representation.

Ahmed does not explicitly cite or challenge other specific findings of fact or conclusions of law, and the nature of his arguments based on other findings or conclusions is not clear from his briefs. As such, his other arguments are not properly before us. See RAP 10.3(g); Harris, 133 Wn. App. at 138 (technical violations of RAP 10.3(g) may be waved where the brief makes the nature of the challenge clear and included challenged findings in text). But, even if we were to consider Ahmed's other arguments, and those issues attached to Ahmed's notice of appeal, they constitute challenges to the efficacy of his legal representation—

---

[4] Ahmed also challenges the trial court's conclusion of law that Glacier did not act negligently under the Jones Act with respect to any preinjury training or post injury practices. He argues that Yatte's deposition disproves that conclusion. But, our review of conclusions of law is limited to whether the findings of fact support the conclusion. Here, Ahmed does not argue that the conclusion of law is unsupported by the factual findings. And, to the extent that he argues Yatte's deposition undercuts the factual findings supporting the trial court's conclusion, his argument lacks the proper specificity for our review. See RAP 10.3(a)(6) (stating that argument must be supported with references to relevant parts of the record).

not challenges to the actions of the trial court in his case against Glacier. Therefore, those issues are not properly raised before this court.

But, Ahmed makes two arguments framed as challenges to his legal representation that could also relate to an error made by the trial court. First, Ahmed asserts that he did not have an adequate translator at trial and that he had difficulty understanding the translators. Secondly, he notes that he did not have the benefit of a jury trial. Because inadequate interpreter services and the wrongful denial of a jury demand have the capability of resulting from an erroneous decision of the trial court, in an abundance of caution, we will consider those two issues.[5]

First, Ahmed argues that he did not have an adequate interpreter for trial. He claims both that he did not have an interpreter for the entire trial as he should have and that he was unable to understand the interpreter that was provided to him.

It is the declared policy of this state under RCW 2.43.010

> to secure the rights, constitutional or otherwise, of persons who, because of a non-English speaking cultural background, are unable to readily understand or communicate in the English language, and who consequently cannot be fully protected in legal proceedings unless qualified interpreters are available to assist them.

"Non-English speaking person" means any person involved in a legal proceeding who cannot readily speak or understand the English language. RCW 2.43.020(4).

---

[5] Ahmed argued that he did not have a proper interpreter in the arguments attached to his notice of appeal. But, he first noted that he did not have the benefit of a jury trial in his reply brief. An issue raised and argued for the first time in a reply brief is generally too late to warrant consideration. Cowiche Canyon, 118 Wn.2d at 809. But, we exercise our discretion and consider Ahmed's argument to confirm that any errors regarding the jury demand made in Ahmed's case are not attributable to the trial court. See Boyd, 127 Wn.2d at 265.

The right to an interpreter in the civil context is not as well established as in the criminal context. But, because the statute on its face applies to any non-English speaking person involved in a "legal proceeding," we apply to the civil setting the same basic right to an interpreter and standard of review for the trial court's decision whether to appoint one. Id.; see, e.g., In re Marriage of Olson, 69 Wn. App. 621, 624, 850 P.2d 527 (1993) (noting that the appointment of an interpreter in a civil dissolution matter is within the discretion of the trial court and finding that a hearing-impaired party was not entitled to an interpreter because his need for one was not made apparent to the trial judge and his impairment was accommodated to the extent required).

Here, prior to trial beginning, Ahmed's attorney informed the trial court that Ahmed would require an Arabic interpreter. The trial court then stated to counsel, "Your client, Mr. Ahmed, is not requiring that an interpreter be present the entire trial, just when he's testifying." Ahmed's attorney clarified that the court's understanding was correct. The trial court noted, "I just don't want any issues coming back later on that [Ahmed] didn't have a fair hearing." Ahmed's counsel replied that Ahmed would not need an interpreter for the majority of his testimony and that the interpreter was necessary for only technical issues that Ahmed could not understand or articulate. The court then stated, "I just don't want any issues coming back later on saying that, you know, we requested an interpreter should have been present the whole proceedings, when it's hard to get one." Neither

party objected at that point or noted interest in having an interpreter throughout the entire proceeding.

Ahmed was the first witness to testify at trial. An interpreter was present during Ahmed's testimony. Ahmed began his testimony on direct examination by speaking in English. After several minutes of testimony, the court told Ahmed's attorney that he should begin using the interpreter, because Ahmed began using technical terms. The interpreter clarified that he would interpret everything from that point onward during Ahmed's testimony. Still, Ahmed attempted to use English and the court had to encourage Ahmed to speak in Arabic. At one point, counsel for Glacier noted that both Ahmed and the interpreter were both speaking English and that counsel was able to understand Ahmed. Later, the court again advised Ahmed's attorney that Ahmed should use the interpreter. After Ahmed testified, the interpreter was present in the courtroom during Ivie's testimony. But, he was dismissed because he was not needed. Later, Ahmed returned to testify on rebuttal. Ahmed's counsel noted that, "He feels comfortable doing it given the subject matter without [an] interpreter."

Based on this record, there is no evidence that Ahmed requested interpretation services and that the request for an interpreter was denied. In fact, the trial court encouraged Ahmed to use the interpreter and he resisted. Moreover, based on this record, it is not evident that Ahmed is considered a "non-English speaking person" requiring an interpreter under the statute. RCW 2.43.020(4).

Therefore, we conclude that any potential error regarding a lack of interpretation services at trial is not attributable to the trial court's abuse of discretion.

Ahmed also notes that he did not have a jury trial, implying that he wanted a jury trial. Ahmed's original complaint included a jury demand. On November 6, 2014, Glacier filed a jury demand. Glacier noted that it had not filed a jury demand up until that point, because it relied on Ahmed's request for a jury demand in his initial complaint. Glacier stated that it learned from Ahmed on November 6 that he failed to pay the jury fee and that he no longer wanted a jury trial. Therefore, Glacier attempted to pay the jury fee and demanded a trial by jury. On November 12, 2014, Ahmed filed a motion to strike an untimely jury demand, arguing that Glacier waived its right to a jury trial under CR 38 and King County Local Civil Rule (KCLCR) 38.

CR 38(b) outlines how a party must make a demand for a jury. The rule provides that the party must serve upon the other party a demand in writing, by filing the demand with the clerk, and by paying the jury fee required by law. Id. CR 38(d) states that the failure of a party to serve a demand as required by the rule and to pay the jury fee constitutes a waiver by the party of trial by jury. KCLCR 38 provides that the demand for a jury must be contained in a separate document and that the demand must be filed and served no later than the final date to change trial designated in the case schedule.

Here, the amended case schedule specified that the last date for filing the jury demand was August 25, 2014. No separate document containing a jury

11

demand was filed nor was the jury fee paid before that date. Based on this information, on November 20, 2014, the trial court struck the jury demand and concluded that the case would be a bench trial. On this record, it is clear both that Ahmed's counsel actively sought a bench trial instead of a jury trial and that the trial court properly concluded that the parties had waived their rights to a jury trial. Therefore, if there is any error attributable to the trial proceeding as a bench trial, the error is not as a result of an action taken by the trial court.

Finally, in response to Ahmed's opening brief, Glacier argues that the issues Ahmed raises on appeal are frivolous. Glacier cites to RAP 18.9(a) and notes that an appellate court may on its own initiative order a party who files a frivolous appeal to pay terms or compensatory damages to any party harmed by its actions. Glacier argues that Ahmed's appeal is frivolous, because Ahmed only critiques his legal representation and restates the fact that he is injured without referencing Glacier's negligence. Glacier also argues that the appeal is frivolous, because Ahmed's opening brief provides no support of the issues for review, no citations to legal authority supporting that the trial court erred in its factual findings or misapplied the law, and makes no reference to relevant parts of the record proving such errors.

Under RAP 18.9(a), we may award sanctions, such as a grant of attorney fees and costs to an opposing party, when a party brings a frivolous appeal. Granville Condo. Homeowners Ass'n v. Kuehner, 177 Wn. App. 543, 557, 312 P.3d 702 (2013). Even assuming Ahmed's appeal is frivolous, we must then decide

whether to exercise our discretion to award fees to Glacier. <u>See</u> RAP 18.9(a). We decline to do so.

We affirm.

Appelwick, J

WE CONCUR: