# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| BILLIE A. CLEVENGER, | No. 57186-2-II |
| Appellant, | |
| v. | |
| BRENDA COURSER, | UNPUBLISHED OPINION |
| Respondent. | |

PRICE, J. — Billie A. Clevenger sued her sister, Brenda Courser, to quiet title by adverse possession to disputed family property. After a bench trial, the trial court rejected Clevenger's arguments and quieted title to Courser.

Clevenger appeals, arguing that there is substantial evidence in the trial record to show that she established adverse possession over the disputed property and asserting Courser's testimony lacked credibility. But, notably, Clevenger does not challenge any of the trial court's findings of fact and makes no argument that they do not support the trial court's conclusions of law. Instead, Clevenger asks us to reweigh evidence and make credibility determinations. Consistent with our limited role in an appellate review, we will not do so. We affirm the trial court and grant attorney fees to Courser.

No. 57186-2-II

FACTS

I. BACKGROUND

Clevenger and Courser are the daughters of William and Anna Rigdon.[1]  In the 1960s, the Rigdons bought several parcels of property in Longview, including multiple properties on both the west and east sides of 48th Avenue.

The Rigdons moved away in the 1980s, but they kept the Longview properties in the ownership of a closely held corporation, RPC Family Farms.  Courser was an officer of RPC Family Farms; Clevenger and her husband were employees of the corporation and generally performed caretaking tasks on the properties and managed rentals.

Clevenger and her husband moved onto a property west of 48th Avenue (west-side property) in the 1990s, and Clevenger has continuously lived there since (her husband lived there until his death in 2010).

William Rigdon passed away in 2001.  Clevenger apparently believed her father had wanted her to take ownership of the land directly across from where she lived, on the east side of 48th Avenue (disputed property).  And following his death, Clevenger believed that the property actually did pass to her.  At the time, the disputed property mostly consisted of a field with a dilapidated barn and was overgrown with weeds and blackberries.  From 2002 to 2008, Clevenger and her husband cleaned up and maintained the disputed property.  Although Clevenger believed

---

[1] Our background facts largely come from the trial court's unchallenged findings of fact. *Harris v. Urell*, 133 Wn. App. 130, 137, 135 P.3d 530 (2006), *review denied*, 160 Wn.2d 1012 (2007) (explaining that unchallenged findings of fact are verities on appeal).

2

she owned the disputed property and told her children she was the owner, she did not convey this to her sister, Courser.

But title to the disputed property did not actually pass to Clevenger on the death of her father. RPC Family Farms had maintained ownership of the disputed property. Later, in 2007, RCP Family Farms deeded the disputed property to Courser. Clevenger learned of the transfer to Courser in 2008 or 2009, but she nevertheless maintained her belief that her father intended for her to have the disputed property and it actually belonged to her. Clevenger still did not tell Courser that she believed she owned the property.

The Clevengers continued to use the disputed property. At some point between 2002 and 2008, the Clevengers either created or expanded a gravel parking strip on the disputed property, and Clevenger and her immediate family regularly parked cars there. But, over the years, when requested by Courser, Clevenger and her family moved their parked cars off the disputed property.

In 2019, problems developed between the sisters. Courser requested that Clevenger and her family remove some cars from the disputed property and Clevenger resisted. This was the first time that Courser realized Clevenger claimed ownership to the disputed property. Soon thereafter, Clevenger sued Courser and asserted ownership of the disputed property through adverse possession.

II. BENCH TRIAL

The case proceeded to a bench trial. Clevenger called several witnesses, including family members and neighbors, who testified that they did not see Courser on the disputed property prior to 2019. In contrast, Courser testified that she periodically used the disputed property and hired several people to hay and maintain the disputed property throughout the years. Courser also called

additional witnesses who explained they were hired by Courser to hay and mow the disputed property between 2008 and 2014.

Ultimately, the trial court concluded that Clevenger failed to prove she held title to the disputed property through adverse possession. According to the trial court's unchallenged findings of fact, both sisters maintained the disputed property at various times after the property was deeded to Courser. From 2008 to 2010 and again from 2012 to 2014, Courser hired different people to hay and mow the disputed property. However, from 2015 to 2019, Clevenger also hired someone to mow and hay the disputed property.

From these findings of fact (and others), the trial court's conclusions of law explained that Clevenger did not show the elements of adverse possession because her maintenance of the disputed property was interrupted:

> Between 2001 and 2019, there was never a ten year period where Billie Clevenger continuously occupied the subject property in a manner that [was] hostile, actual, open and notorious and exclusive. Any activity that was arguably adverse between 2001 and 2019 was interrupted when Brenda Course[r] had the property hayed from 2008 to 2014 and the Clevengers failed to object to Brenda Courser performing those acts of ownership.

Clerk's Papers at 956. Thus, the trial court dismissed Clevenger's claim to the disputed property.

Clevenger appeals.

## ANALYSIS

### I. ADVERSE POSSESSION

Clevenger argues that she provided substantial evidence at trial to show that she owned the disputed property through adverse possession. Clevenger also argues that Courser's testimony

lacked credibility. But Clevenger does not assign error to, or otherwise challenge, any of the trial court's findings of fact.

We review a trial court's findings of fact following a bench trial to determine whether those findings are supported by substantial evidence. *In re Estate of Barnes*, 185 Wn.2d 1, 9, 367 P.3d 580 (2016). Substantial evidence is that which is sufficient to persuade a fair-minded person of the truth of the premise. *In re Marriage of Condie*, 15 Wn. App. 2d 449, 459, 475 P.3d 993 (2020). Unchallenged findings of fact are verities on appeal. *Harris v. Urell*, 133 Wn. App. 130, 137, 135 P.3d 530 (2006), *review denied*, 160 Wn.2d 1012 (2007).

We do not reweigh evidence or substitute our opinions for those of the trier of fact. *Bale v. Allison*, 173 Wn. App. 435, 458, 294 P.3d 789 (2013). Instead, we review the record in the light most favorable to the prevailing party to determine if substantial evidence supports the trial court's findings of fact. *Harrison Mem'l Hosp. v. Gagnon*, 110 Wn. App. 475, 485, 40 P.3d 1221, *review denied*, 147 Wn.2d 1011 (2002). Further, we do not review determinations of witness credibility found by the trial court. *Morse v. Antonellis*, 149 Wn.2d 572, 574, 70 P.3d 125 (2003). We defer to the trial court's determinations regarding conflicting testimony. *State v. Curtiss*, 161 Wn. App. 673, 693, 250 P.3d 496, *review denied*, 172 Wn.2d 1012 (2011).

To establish a claim of adverse possession, a party must show possession of the claimed property was (1) open and notorious, (2) actual and continuous for the statutory period, (3) exclusive, and (4) hostile. *Maier v. Giske*, 154 Wn. App. 6, 18, 223 P.3d 1265 (2010). Relevant to this case, the statutory period is ten years. RCW 4.16.020. The party asserting adverse possession has the burden of proving its elements by a preponderance of the evidence. *Teel v. Stading*, 155 Wn. App. 390, 394, 228 P.3d 1293 (2010).

Clevenger argues that she proved each element of adverse possession during the bench trial. Clevenger recites the relevant law for the elements of adverse possession and then cites to the testimony from the bench trial that allegedly supports each element. Clevenger also argues that Courser's testimony lacked credibility and that the trial court erred in believing Courser's claim that she hired people to hay the disputed property.

Despite her arguments, Clevenger fails to assign error to any of the trial court's findings of fact. And she makes no argument that any particular finding was not supported by substantial evidence. Instead, Clevenger supports her adverse possession claim with her own selective parts of the record contradicting the trial court's findings of fact.

Clevenger essentially asks us to reweigh the evidence and replace the trial court's findings of fact without making any assignments of error. This, we will not do. We do not conduct a de novo review of the record to determine whether Clevenger showed the elements of adverse possession. *See Harrison Mem'l Hosp.*, 110 Wn. App. at 485. Nor do we reweigh the evidence to substitute our opinions for those of the trier of fact. *Bale*, 173 Wn. App. at 458. Our role is limited to reviewing the record to ensure *challenged* findings of fact are supported by substantial evidence. *Harrison Mem'l Hosp.*, 110 Wn. App. at 485.

But here, because Clevenger has not challenged any specific finding of fact, they are all verities on appeal. *See Harris*, 133 Wn. App. at 137. And once the trial court's findings are verities, Clevenger has utterly failed to explain how the trial court's findings do not support the trial court's conclusion that adverse possession was not proven. It is not for us to make these

arguments for Clevenger. [2] *See* RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (we will not consider issues that are not supported by argument).

Clevenger also contests the trial court's credibility determinations, arguing the trial court erred by believing some of Courser's testimony about hiring people to mow and hay the disputed property. Clevenger points to various parts of Courser's testimony that she claims contradict her previous deposition, attempting to show us that Courser was not a credible witness. But we do not review determinations of witness credibility. *Morse*, 149 Wn.2d at 574.

In the end, Clevenger's appeal fails because it relies on us reweighing evidence and remaking credibility determinations—tasks that are inappropriate in our appellate role.

## II. ATTORNEY FEES

Courser requests that we award her attorney fees for this appeal under RAP 18.1 and RCW 7.28.083(3).

RAP 18.1 grants us the ability to award attorney fees if applicable law allows. Attorney fees may be awarded on appeal only when authorized by a contract, a statute, or a recognized ground of equity. *Labriola v. Pollard Grp., Inc.*, 152 Wn.2d 828, 839, 100 P.3d 791 (2004). For cases involving claims of adverse possession, RCW 7.28.083(3) provides such a basis by allowing us to grant attorney fees to the prevailing party when doing so would be equitable and just.

---

[2] Even if Clevenger had attempted to argue that the existing findings of fact (now verities on appeal) did not support the trial court's ultimate conclusion, it is hard to see how Clevenger could prevail. The findings of fact clearly state that any hostile use by Clevenger from 2002 to 2019 was interrupted between 2008 and 2014 by Courser's maintenance of the disputed property. This interruption eviscerates any argument that the required element of continuous use was met.

Because Clevenger offered no appropriate grounds for us to review the trial court's decision, we determine that Clevenger's appeal is entirely without merit and, accordingly, awarding fees for this appeal to Courser, as the prevailing party, is equitable and just. We award attorney fees to Courser.[3]

## CONCLUSION

We affirm the trial court and award Courser attorney fees for this appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

LEE, P.J.

VELJACIC, J.

---

[3] Courser also characterizes Clevenger's appeal as frivolous and requests attorney fees under RAP 18.9 as a sanction. Because RAP 18.1 and RCW 7.28.038(3) authorize us to grant Courser attorney fees, we do no further consider this alternative authority for awarding attorney fees.