# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ALASKA NORTHWEST INDUSTRIES INC., a Washington corporation, and GARY J. LUNDGREN, TDL DEVELOPMENT, LLC, a Washington limited liability company, ALASKA-NORTHWEST INDUSTRIES, INC., a Washington corporation, | No. 56633-8-II |
| Respondents/Cross-Appellants, | UNPUBLISHED OPINION |
| v. | |
| ANN R. DEUTSCHER and RANDALL BERG, both individually and as a marital community, | |
| Appellants/Cross Respondents, | |
| ANN R. DEUTSCHER and RANDALL BERG, both individually and as a marital community, | |
| Appellants/Cross Respondents, | |
| v. | |
| TIFFANY LUNDGREN, individually, and RONALD SHECKLER and JEAN SHECKLER, individually and as a marital community, | |
| Respondents/Cross-Appellants. | |

CHE, J. — Ann Deutscher-Berg and Randall Berg (Bergs) appeal the denial of their

prescriptive easement claims and the grant of attorney fees. Alaska Northwest Industries, Inc.,

Gary Lundgren, TDL Development, LLC, and Alaska-Northwest Industries, Inc. (collectively,

ANWI) filed a conditional cross-appeal regarding attorney fee issues.

No. 56633-8-II

ANWI sought to eject the Bergs from ANWI's lot on Ketron Island. The Bergs counterclaimed, arguing they had adversely possessed a large portion of ANWI's lot and acquired prescriptive easements. ANWI conceded that the Bergs adversely possessed the cabin the Bergs were occasionally residing in, as well as surrounding curtilage. After a bench trial, the trial court granted the Bergs all of the land ANWI conceded and denied the Bergs' remaining claims. The trial court determined that ANWI was the prevailing party and awarded attorney fees.

We hold (1) substantial evidence supports the finding that the Bergs constructed the cabin driveway, but to the extent that finding of fact (FOF) 1.32 could be interpreted as finding that ANWI drew a boundary line running predominately north-south to grant the Bergs the entire cabin driveway, we hold that such an interpretation is not supported by substantial evidence, (2) the Bergs failed to establish any prescriptive easements, (3) the trial court did not violate CR 54(d)(2) by considering ANWI's request to establish the amount of attorney fees, (4) the trial court properly determined that ANWI was the prevailing party, and (5) the trial court did not err in considering compromise negotiations solely to determine the amount of time ANWI expended in the settlement process. As we do not reverse on any of the attorney fee issues, we decline to consider ANWI's cross-appeal. Thus, we affirm. As ANWI prevails on appeal, we grant ANWI reasonable appellate attorney fees regarding adverse possession.[1]

---

[1] The Bergs did not appeal the adverse possession determination directly. But the Bergs appealed the trial court attorney fee order, which implicates the adverse possession determination below.

2

FACTS

I. BACKGROUND

Ketron Island is a small island located southwest of Steilacoom. ANWI owns approximately 90 parcels of real property on Ketron Island—about 70 percent of the island. The Bergs own a neighboring parcel to an ANWI parcel. ANWI seemed to own what the trial court termed Lot 006, and the Bergs owned Lot 002. Disagreements over the boundaries of those parcels gave rise to the present litigation.

Generally, Ketron Island residents used their homes sporadically, for summering or vacationing. West Beach is the only easily accessible beach on the island. Lot 006 contains the entirety of West Beach. ANWI and its predecessors in interest allowed any Ketron Island resident and their guests to use West Beach at any time without seeking overt permission.

The residents and their guests used this area for social gatherings, fishing, camping, and vehicle parking—including parking for boats, cars, and other recreational vehicles. ANWI and its predecessors in interest also allowed any resident to use the North and South Driveways to access West Beach to facilitate neighborly use of the beach. Prior to 2018, ANWI had never restricted anyone's access to the driveways.

Lot 002 is a largely rectangular plot immediately to the south of Lot 006. Lot 002 is also bordered to the east by Lot 006. There is a general access road to the east of Lot 002 known as Merry Lane. On the south end, Lot 002 is bordered by another of ANWI's parcels, Lot 007. There is a cabin that is located mostly within the boundaries of Lot 006.

There are two driveways that provide access to West Beach from Merry Lane. One of the driveways enters through the north end of the east boundary of Lot 006, which is called

North Driveway. The other enters further to the south, which is called South Driveway. Both of the driveways are entirely on Lot 006. One way to access the cabin is by traveling on the South Driveway and making a sharp left turn onto a mixed grass and gravel road. We refer to that road as the cabin driveway.

The present dispute has its roots in 1926. That year, YLA—an entity comprised of local high school alumni—acquired Lot 002. YLA built a small, rustic cabin in the 1930s, which the members used for occasional social gatherings. Importantly, YLA constructed a cabin on the northern border of Lot 002 such that most of the cabin resided on Lot 006. The Branchflower family acquired Lot 002 and the cabin in 1997 and continued to use it sparingly.

The Branchflowers sold Lot 002 and the cabin to Ann Deutscher in October 2002. In December of that year, Deutscher's lawyer sent a letter to ANWI maintaining that Ann owned the portion of Lot 006 that her cabin encroached upon. It is unclear if ANWI responded. The following year, Deutscher's lawyer sent another letter to the attorney who represented Gary Lundgren around 2002—proposing that Deutscher receive property 40 feet north of the cabin running parallel to the east-west boundary line between Lot 002 and 006, and a nonexclusive permanent easement at the southeast corner of Lot 006. Deutscher married Randall Berg in 2008.

Gary Lundgren's daughter, Tiffany Lundgren, began spending more time on the island around 2018. In August 2019, Tiffany, acting on behalf of ANWI, sent a letter to the Bergs revoking their access to use West Beach and the South and North Driveways. Contemporaneously, ANWI granted a roadway easement to the Bergs on Lot 007 to provide effective access to their parcel.

4

In June 2020, ANWI filed a lawsuit against the Bergs for quiet title and trespassing. ANWI sought title to the entirety of Lot 006, including the Bergs' cabin. In response, the Bergs counterclaimed for, among other things, adverse possession of the southern parts of Lot 006 and prescriptive easement.

The following year, ANWI conceded that the Bergs owned the cabin via adverse possession. The Bergs moved for partial summary judgment on their adverse possession and prescriptive easement claims, among other things. The trial court granted partial summary judgment quieting title of the cabin to the Bergs but denying their other claims.

In ANWI's trial brief, it conceded that the Bergs had acquired by adverse possession more of Lot 006, which it characterized as manicured curtilage. Specifically, ANWI conceded that the Berg's new north boundary should be just north of the tree line, and the new east boundary should be just east of the manicured curtilage—or the cabin driveway. ANWI attached an exhibit to their trial brief depicting this conceded boundary with a yellow line. That concession did not include a small portion of the cabin driveway—outside of the tree line—right before the cabin driveway intersects with the South Driveway.

The Bergs argued they were entitled, via adverse possession, to land substantially north of the tree line, including parking and a portion of West Beach, and land substantially east of the cabin driveway. The Bergs also argued that they were entitled to prescriptive easements regarding the aforementioned parking, a footbridge that the Bergs would use to access their cabin after parking on West Beach, the North and South Driveway, and footpaths from the footbridge going down to West Beach, and the cabin driveway.

We describe the trial court's factual findings relevant to the prescriptive easement issues below.[2]

A.      *North and South Driveway*

The Bergs used the North and South driveways to access their cabin. The trial court found that maybe the Bergs used these driveways more than others due to the proximity of their cabin, but their use was not different from others in character.

B.      *Parking on West Beach, Footbridge, Beach Pathways, and General West Beach Use*

North of the tree line on West Beach, the Bergs would park their vehicles when they stayed at the cabin. To cross through the tree line to their cabin, the Bergs would use a small footbridge running over a creek feature. The Bergs reconstructed this small footbridge when they acquired the cabin. Just north of the tree line, the Bergs would use a footpath running east to west to access West Beach and the adjacent waterfront.

Near the east-west tree line, the Bergs constructed two sections of fencing that either fell or were taken down. Neither section existed more than five years. And the trial court found the fences were not constructed or maintained in a hostile manner.

The trial court found, "Prior to 2018 [ANWI] and its predecessors in interest welcomed all those who owned property on Ketron Island and their guests to use West Beach. Such uninhibited use by nonowners of Lot 006 was open, anytime access to anywhere on West Beach." Clerk's Papers (CP) at 3248. And residents used the beach for a myriad of recreational

---

[2] Of note, the trial court found that "Lot 002 consists of 2.39 acres." Clerk's Papers at 3243. The Bergs used to pay taxes on 2.39 acres for Lot 002. The Bergs submitted a declaration that alleged that Lot 002 plus the land they claimed via adverse possession equals 2.39 acres in total.

activities like beach combing. Residents also parked cars and recreational vehicles on West Beach.

C.    *Cabin Driveway*

The trial court found, "The segment of the yellow line that runs predominately north-south was drawn by the [ANWI] to grant the [Bergs] title to the land under the short vehicular driveway that the [Bergs'] constructed to . . . connect Lot 002 to the West Beach South Driveway." CP at 3246 (referencing CP at 1730).

Relevantly, but not contained in the findings, Thomas Palmer testified that the cabin driveway did not exist when he installed the utilities at the cabin for the Branchflowers, and the cabin driveway did not exist during the Branchflowers' ownership of the cabin. Randall Berg testified that he would apply gravel to the cabin driveway as needed. Randall also testified that it may have been six years since he last applied gravel to the cabin driveway. But Randall testified that he maintained the driveway on an annual basis by bolstering certain areas. And he would sometimes use the cabin driveway to unload his vehicle closer to the cabin.

## II.  RULING AND POST-TRIAL MATTERS

In January 2022, the trial court determined that the Bergs acquired only the portion of Lot 006 that ANWI conceded in their trial brief by adverse possession, but no more. The trial court determined that the Bergs' use of the North and South Driveways, the footbridge and related pathways, and parking on West Beach were permissive neighborly accommodations until 2018. The trial court denied all of the Bergs' prescriptive easement claims, including the claim related to the cabin driveway.

7

The trial court noted that both parties had requested attorney fees, and that it may award costs and attorney fees in both adverse possession and prescriptive easement actions. The trial court awarded attorney fees to ANWI as the prevailing party under RCW 7.28.083(3)—the amount of which was to be determined at a later date under CR 54(d). Finally, the trial court ordered the parties to cooperate and create a legal description of the new boundary.

On April 7, 2022, the trial court entered an order establishing a new boundary based on the parties' agreement. That order shows that the Bergs now own most of the cabin driveway, but not the small portion just before the cabin driveway intersects with the South Driveway.

On April 15, 2022, ANWI moved to establish the amount of the attorney fee award. In their motion, ANWI extensively discussed settlement negotiations with the Bergs. ANWI attached the Declaration of Scott Weaver in support, which included extensive documentation of the settlement negotiations. The Bergs moved to strike ANWI's motion and the related declaration for violating ER 408 and the Uniform Meditation Act, chapter 7.07 RCW. In a separate filing, the Bergs also argued that the motion to establish the amount of attorney fees was not timely under CR 54(d).

The trial court granted the motion to strike the Weaver declaration in part, found ANWI's motion timely, awarded $425,000 in attorney fees to ANWI, and considered the settlement offers "only for the purpose of considering the time, effort, and resources expended in making such offers in an attempt to resolve this case." CP at 4293-94. The trial court specified that it "did not consider facts presented in the Weaver Declaration relating to unsuccessful settlement negotiations and/or allegedly unreasonable conduct relating to settlement negotiations as such is not admissible in determining the amount of the fees requested." CP at 4290 n.1.

8

The Bergs appeal the trial court's prescriptive easement ruling and the grant of attorney fees. ANWI conditionally cross-appeals in the event we remand for any of the attorney fee issues.

## ANALYSIS

### I. ASSIGNMENTS OF ERROR

The Bergs assign error to numerous factual findings. ANWI assigns error to FOF 1.32.[3]

The trial court's findings in adverse possession cases present mixed questions of law and fact. *Harris v. Urell*, 133 Wn. App. 130, 137, 135 P.3d 530 (2006). We review the trial court's findings for substantial evidence. *Id*. Where there is enough evidence to persuade an impartial rational person of the truth of the finding, substantial evidence exists to support that finding. *Id*. If the findings are supported, we then review whether the findings support the conclusions of law. *Id*. Unchallenged findings are verities on appeal. *Id*.

Under RAP 10.3(a)(4), a party's brief should contain "[a] separate concise statement of each error a party contends was made by the trial court." Each challenged FOF requires "a separate assignment of error." RAP 10.3(g). We "will only review a claimed error which is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto." RAP 10.3(g). "Without argument or authority to support it, an assignment of error is waived." *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004).

Aside from FOF 1.9, the Bergs fail to mention any findings after enumerating their assignments of error. The Bergs do not develop their argument as to any finding or explain why

---

[3] A respondent may properly assign error to a factual finding without having to file a cross-appeal of the underlying order. *State v. Kindsvogel*, 149 Wn.2d 477, 481, 69 P.3d 870 (2003).

any finding is not supported by the record. For its part, ANWI assigns error to FOF 1.32. The other FOF are verities on appeal.

A.    *FOF 1.9*

FOF 1.9 provides, in part, "Lot 002 consists of 2.39 acres." CP at 3243. The Bergs argue that the original size is roughly 54,000 feet, which would have been around one acre. It does not appear that the Lot 002 was originally 2.39 acres, so the finding appears unsupported. Instead, the amount of property the Bergs claimed by adverse possession was 2.39 acres.

But the significance of the error with FOF 1.9 is unclear. The Bergs do not argue that a conclusion of law is erroneous because the finding about the original lot size is unsupported, nor do the Bergs seeks reversal on this basis. And the original size of Lot 002 is not relevant to the prescriptive easement claims and attorney fee issues that the Bergs raise on appeal. Thus, this unsupported finding is not grounds for reversal.[4]

B.    *FOF 1.32*

FOF 1.32, in part, provides,

> The segment of the yellow line that runs predominately north-south was drawn by [ANWI] to grant the [Bergs'] title to the land *under* the short vehicular driveway that the [Bergs] constructed to . . . connect Lot 002 to the West Beach South Driveway.

CP at 3246 (emphasis added). ANWI argues that there is not substantial evidence to show (1) the Bergs constructed this driveway, and (2) ANWI drew this yellow line to grant the Bergs this driveway.

---

[4] When a finding is unsupported by substantial evidence but does not ultimately affect the conclusions of law, that error does not warrant reversal. *State v. CLA Estate Servs., Inc.*, 23 Wn. App. 2d 279, 290, 515 P.3d 1012 (2022), *review denied sub nom. State v. CLA Estate Servs.*, 200 Wn.2d 1028 (2023), and *cert. denied*, 23-29, 2024 WL 71910 (U.S. Jan. 8, 2024).

First, substantial evidence supports the finding that that the Bergs constructed the cabin driveway. The Bergs point us to Palmer's testimony. Palmer testified that the cabin driveway did not exist when he installed the utilities at the cabin for the Branchflowers, and the cabin driveway did not exist during the Branchflowers' ownership of the cabin. As the Bergs were the owners following the Branchflowers, the inference is that the Bergs constructed the cabin driveway. This is sufficient.

Next, FOF 1.32 states, the yellow line was "drawn by [ANWI] to grant the [Bergs'] title to the land *under* the short vehicular driveway that the [Bergs] constructed . . ." CP at 3246 (emphasis added). Rephrased, FOF 1.32 states that ANWI drew the segment of yellow line running predominately north-south to grant the Bergs title to the land under the cabin driveway. It is unclear what the trial meant by using the term "under" in this context.

To the extent FOF 1.32 could be interpreted as ANWI drew the segment of yellow line running predominately north-south to grant the Bergs the entire cabin driveway, we agree with ANWI that such an interpretation is not supported by substantial evidence. ANWI submitted an exhibit showing the bounds of their concession. ANWI drew the yellow line to recognize the new boundary—"east of the cabin, the new boundary should be adjusted to just east of the manicured curtilage." CP at 1713. That concession does not appear include a small portion of the cabin driveway right before it intersects with the South Driveway.

Moreover, that small portion of the cabin driveway is outside of the tree line. To the extent FOF 1.32 could be interpreted as ANWI drew the segment of yellow line running predominately north-south to grant the Bergs the entire cabin driveway, we hold that substantial

11

evidence does not support that FOF.  Rather, ANWI drew the yellow line to define the scope of its concession.[5]

## II. PRESCRIPTIVE EASEMENTS

The Bergs argue that the trial court erred by determining that the hostile use element of their prescriptive easement claims was not established as to the North and South Driveways, the footbridge, the West Beach footpaths, the West Beach parking near the footbridge, the "tidelands and shoreline,"[6] and the small portion of the cabin driveway that intersects with the South Driveway that they did not acquire via concession.  Br. of Appellants at 18.  We disagree.

Prescriptive easements are not favored by law.  *Gamboa v. Clark*, 183 Wn.2d 38, 43, 348 P.3d 1214 (2015).

> To establish a prescriptive easement, the person claiming the easement must use another person's land for a period of 10 years and show that (1) he or she used the land in an "open" and "notorious" manner, (2) the use was "continuous" or "uninterrupted," (3) the use occurred over "a uniform route," (4) the use was "adverse" to the landowner, and (5) the use occurred "with the knowledge of such owner at a time when he was able in law to assert and enforce his rights."

*Id*. (quoting *Nw. Cities Gas Co. v. W. Fuel Co.*, 13 Wn.2d 75, 85, 123 P.2d 771 (1942)).  The party asserting the prescriptive easement bears the burden of establishing the elements.  *Id*.

Adverse use generally means the land use occurred without the owner's permission.  *Id*. at 44.  But we presume that someone enters another's land with the owner's permission in three

---

[5] While we agree with ANWI on this part of their substantial evidence argument as to FOF 1.32, we note that ANWI is not seeking affirmative relief.  As such, the error in FOF 1.32 is not grounds for reversal—but a fact we consider while engaging in our analysis of the other issues.

[6] The Bergs argue on appeal that they established a prescriptive easement as to "tidelands and shoreline."  Br. of Appellant at 17-18.  The Bergs don't define what they are referencing in other portions of their brief.  We construe this claim as arguing for a prescriptive easement for general access to areas near the shore on West Beach.

circumstances: (1) cases involving unenclosed land, (2) when one can reasonably infer that the land use was permitted by neighborly acquiescence, or (3) when the owner created or maintained a road that their neighbor used in a noninterfering manner. *Id*.

It is a low bar to establish a reasonable inference of neighborly acquiescence. *Id*. at 51. It may occur when the claimant uses a private footpath through the neighbor-owner's beachfront property without express permission in conjunction with the owner and others and without incident. *Id*.

In *Gamboa*, the Gamboas used their neighbors' road as a driveway to access their home. *Id*. In contrast, their neighbors used the road to farm grapes. *Id*. Our Supreme Court held that there was a reasonable inference of neighborly acquiescence as the parties used the road for their own reasons, contemporaneously, and without conflict. *Id*.

The permissive use presumption can be overcome by presenting facts to show that the user was adverse and hostile to the owner's rights, or if the owner implied by their actions that the user has an easement right. *Id*. at 51-52. To show the former, the claimant must present evidence they "interfered" with the owner's land use. *Id*. For example, the *Gamboa* court cited *Nw. Cities Gas* wherein the claimant interfered with the owner's land use by creating and maintaining a defined road across another's premises. *Id*. (citing 13 Wn.2d at 90-91). To that end, evidence that the claimant constructed the road for their exclusive use supports a hostile use determination. *Cuillier v. Coffin*, 57 Wn.2d 624, 627, 358 P.2d 958 (1961).

When the use arises from mutual neighborly acquiescence or from an express grant of permission, the use is "'permissive in its inception,'" which creates a higher burden. *Gamboa*, 183 Wn.2d at 45 (quoting *Roediger v. Cullen*, 26 Wn.2d 690, 713, 175 P.2d 669 (1946)). To

overcome this higher burden, the claimant must show a distinct and positive assertion of a claim of right. *Id*. at 45-46.

A.     *North Driveway, South Driveway, West Beach Parking, West Beach Footpaths, and West Beach Shoreline and Tidelands*

Based on the trial court's findings, the Bergs' use of the North Driveway, South Driveway, West Beach parking, West Beach footpaths, and West Beach shoreline and tidelands was permitted by neighborly acquiescence. ANWI and its predecessors welcomed all property owners on the island to use West Beach at any time without seeking overt permission. Likewise, ANWI and its predecessors allowed all property owners to use the North and South Driveways to access the beach without comment.

And property owners used the beach for various social gatherings and parking of all sorts. While the Bergs may have used the driveways more than other property owners, there is no evidence that such use interfered with ANWI's use. Because the use of the North and South Driveways, parking, related footpaths, and shoreline was permitted by neighborly acquiescence, the Bergs must show a distinct and positive assertion of a claim of right to overcome the permissive in its inception presumption.

To that end, the Bergs make several arguments: (1) the 2002 and 2003 letters to ANWI and their legal counsel established hostile use of all of Lot 006, (2) the Bergs cannot be a hostile user as to some parts of Lot 006 and permissive as to other parts, and (3) because the use of all the claimed prescriptive easements are "inextricably linked" to the adversely possessed cabin, the hostile use element is satisfied as to every prescriptive easement claim. Br. of Appellants at 35.

First, we note that our review is based on whether the factual findings support the conclusions of law. *Harris*, 133 Wn. App. at 137. The trial court did not make factual findings about the 2002 and 2003 letters. The Bergs do not argue that the trial court's findings are inadequate; rather, they merely assign error to a myriad of findings and fail to develop many of those arguments. Even considering the letters, they do not change the aforementioned determination.

The 2002 letter referenced only the cabin and clarification of the boundary. The 2003 letter again references the cabin and also a driveway that is no longer maintained on the south east corner of Lot 006. That letter also *proposes* a new boundary 40 feet north of the cabin. Neither letter even mentions the North and South Driveways, the footpaths, the footbridge, the cabin driveway, the parking, nor the shoreline. As such, those letters are largely irrelevant to these issues.

Next, the Bergs do not provide authority to support their argument that they cannot be a hostile user as to some parts of Lot 006 and permissive as to other parts. We assume that there is no authority to support this proposition as counsel has failed to cite any, and we are not are required to search out supporting authority. *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). As such, we find this argument unpersuasive. We similarly reject the Bergs' related argument that they established adversity as to all the claimed prescriptive easements because such use was inextricably linked to the adversely possessed cabin.

The Bergs cannot show a distinct and positive assertion of right as to any of the aforementioned claims. Therefore, we hold that the Bergs' use of the North and South

Driveways, West Beach footpaths, West Beach parking, and West Beach shoreline and tidelands was not adverse to ANWI.

B.      *Cabin Driveway and Footbridge*

The Bergs argue that the trial court improperly bisected the cabin driveway and the footbridge because the Bergs cannot be simultaneously hostile and permissive users to the same pieces of infrastructure. To that end, the Bergs rely on ANWI's concessions to show that that they met all the elements of prescriptive easements as to parts of the cabin driveway and the footbridge.

The fact that ANWI conceded some of the cabin driveway does not establish that the Bergs adversely possessed all of the cabin driveway. Indeed, because ANWI conceded some of the cabin driveway, the Bergs were relieved of their burden of proof as to that portion of the cabin driveway.[7] Additionally, it is not clear that ANWI conceded the footbridge based on their pretrial concession.[8] The Bergs still bear the burden of establishing adversity as to these two pieces of infrastructure, especially where the Bergs later agreed to a new boundary with ANWI that did not include the entire footbridge.

There is no evidence to suggest that the use of the cabin driveway and footbridge arose from neighborly acquiescence. ANWI and its predecessors' general grant of permission extended to West Beach and its access roads. There is no evidence to suggest that ANWI and its

---

[7] Moreover, a concession on a question of law is not binding on us. *In re Pers. Restraint of Pullman*, 167 Wn.2d 205, 212 n.4, 218 P.3d 913 (2009).

[8] The trial court ruled that the Bergs did not acquire a prescriptive easement for the footbridge. But the trial court granted the Bergs the portion of Lot 006 ANWI conceded and ordered the parties cooperate to create a legal description of the new boundary. The parties agreed to a new boundary, which the court enforced. Apparently, this new boundary bisects the footbridge.

predecessor allowed anyone to use property south of the tree line where the cabin resided. Nor is there evidence that anyone other than the Bergs used either of these pieces of infrastructure.

Nevertheless, these claims involve unenclosed land. And so, the Bergs must overcome the general presumption of permissive use by presenting evidence that their use was adverse and hostile to the owner's rights. *Nw. Cities Gas Co.*, 13 Wn.2d at 87. The nature and location of the claimant's use are important considerations. *Id*. at 88.

In *Nw. Cities Gas*, the claimant company laid out a defined road across the unenclosed premises of another. *Id*. at 90. The claimant annually improved the road and regularly used the road for transportation of heavy materials for industrial purposes. *Id*. at 90-91. The claimant also encouraged the public to use the road to access their property. *Id*. Our Supreme Court held that the evidence was sufficient to overcome the presumption of permissive use. *Id*.

In *Mountaineers v. Wymer*, the claimant used a 200 feet long road across the unenclosed land of another for accessing cottages, camping facilities, and a theater. 56 Wn.2d 721-22, 355 P.2d 341 (1960). The claimant posted a roadway entrance sign with the claimant's name and no trespassing signs. *Id*. Moreover, the claimant also maintained a gate at the road's entrance and occasionally locked said gate. *Id*. Our Supreme Court held that the evidence was sufficient to overcome the presumption of permissive use. *Id*. at 724.

The present facts are clearly distinguishable from the aforementioned cases. As to the footbridge, the trial court's findings merely show that after parking on West Beach, the Bergs would use a small footbridge, they reconstructed, to cross over a creek feature and through the tree line.

Likewise, the findings show that the Bergs constructed the cabin driveway. The record establishes that the Bergs would apply gravel to the cabin driveway as needed. While Randall testified he maintained the driveway on an annual basis by bolstering certain areas, he also testified that it may have been six years since he last applied gravel to the cabin driveway. Randall also testified that he would sometimes use the cabin driveway to unload his vehicle closer to the cabin.

The location of these uses adjoins land that ANWI allowed any Ketron Island property owner to enjoy as a neighborly accommodation—West Beach and the access driveways to West Beach. The character of the Bergs' use was variable and not continuous as the cabin was not used as a full-time residence. Under these circumstances, we hold that the Bergs have failed to present sufficient evidence to overcome the permissive use presumption. In summary, all of the Bergs' arguments related to prescriptive easement fail.

### III. ATTORNEY FEES

The Bergs argue that the trial court erred by awarding attorney fees to ANWI because (1) ANWI's motion for attorney fees was months late, (2) ANWI was not the prevailing party, and (3) the trial court erroneously considered settlement communications in making its award. We disagree.

A. *Timeliness*

We review the interpretation of a court rule de novo. *N. Coast Elec. Co. v. Signal Elec.,
Inc.*, 193 Wn. App. 566, 571, 373 P.3d 296 (2016). We interpret court rules in the same manner as statutes—giving effect to the plain meaning of the rule as a means of enforcing the drafter's intent. *Id.* "Where a court rule is ambiguous, we look to the drafter's intent by 'reading the rule

as a whole, harmonizing its provisions, and using related rules to help identify the legislative intent embodied in the rule.'" *Id*. (internal quotation marks omitted) (quoting *Jafar v. Webb*, 177 Wn.2d 520, 526-27, 303 P.3d 1042 (2013)).

In pertinent part, CR 54 provides,

**(a) Definitions.**

(1) *Judgment.* A judgment is the final determination of the rights of the parties in the action and includes any decree and order from which an appeal lies. A judgment shall be in writing and signed by the judge and filed forthwith as provided in rule 58.

(2) *Order.* Every direction of a court or judge, made or entered in writing, not included in a judgment, is denominated an order.

. . . .

**(d) Costs, Disbursements, Attorneys' Fees, and Expenses.**

. . . .

(2) *Attorneys' Fees and Expenses*. Claims for attorneys' fees and expenses, other than costs and disbursements, shall be made by motion unless the substantive law governing the action provides for the recovery of such fees and expenses as an element of damages to be proved at trial. Unless otherwise provided by statute or order of the court, the motion must be filed no later than 10 days after entry of judgment.

In *N. Coast Elec. Co.*, in August 2014, North Coast requested costs and attorney fees in its summary judgment motion with the amount to be determined at a later date. 193 Wn. App. at 569. In December, the trial court granted North Coast's summary judgment. *Id* at 570. In February, North Coast filed a motion for an award of costs and fees specifying the amount of costs and attorney fees requested with supporting documentation. *Id*. We held that the August 2014 request in the summary judgment motion complied with the plain language of CR 54(d)(2) "because it claimed attorney fees and expenses, was made by motion, and provided the facts and

law necessary for a court to make a determination, and the motion was filed no later than 10 days after judgment was entered." *Id*. at 573.

The Bergs improperly characterize ANWI's April 15, 2022 motion to establish the amount of the attorney fee award as an untimely motion requesting attorney fees under CR 54(d). ANWI merely sought to establish the amount of the fees in that motion.

In the judgment entered on January 3, 2022, the trial court found that both parties asked the court to award them attorney fees and costs. And the trial court determined that ANWI was entitled to fees as the prevailing party, but deferred ruling on the amount of the fee award. Where the court already determined that a party was entitled to attorney fees, CR 54(d)(2) does not prevent the trial court from considering a motion to establish the amount of the attorney fee award filed more than 10 days after the court entered the judgment. As such, we hold that the trial court was not prevented from considering the motion to establish the amount of the attorney fees.

B.      *Attorney Fee Awards under RCW 7.28.083(3)*

        i. *Statutory Construction*

The Bergs argue that a party may not prevail within the meaning of RCW 7.28.083 if they lose title to some portion of property by adverse possession. We disagree.

When engaging in statutory interpretation, we seek to ascertain and enforce the intent of the legislature. *Hum. Rights Comm'n v. Hous. Auth. of City of Seattle*, 21 Wn. App. 2d 978, 985, 509 P.3d 319 (2022). We first examine the plain meaning of the text, considering the context of the statute and the relevant statutory scheme. *Id*. In doing so, we seek to avoid interpreting the statute in such a way as to lead to absurd results. *Id*.

We must give effect to all of the text of the statute and not add any words. *Id*. If the statute is unambiguous—not subject to two or more reasonable interpretations—after engaging in the aforementioned analysis, our inquiry ends. *Id*. RCW 7.28.083(3) provides,

> The prevailing party in an action asserting title to real property by adverse possession may request the court to award costs and reasonable attorneys' fees. The court may award all or a portion of costs and reasonable attorneys' fees to the prevailing party if, after considering all the facts, the court determines such an award is equitable and just.

That provision does not define prevailing party. The prevailing party is generally the party who receives judgment in their favor. *Emerick v. Cardiac Study Ctr., Inc., P.S.*, 189 Wn. App. 711, 732, 357 P.3d 696 (2015). We note that "if both parties prevail on major issues, both parties bear their own costs and fees." *Dave Johnson Ins., Inc. v. Wright*, 167 Wn. App. 758, 783, 275 P.3d 339 (2012).

In certain attorney fee situations where neither party wholly prevailed, state courts have employed the substantially prevailing party analysis. *See Peterson v. Koester*, 122 Wn. App. 351, 364, 92 P.3d 780 (2004). Under that framework, when neither party completely prevails, the court must determine who the substantially prevailing party is by examining the extent of the relief afforded to the parties. *Emerick*, 189 Wn. App. at 732.

It would be inconsistent to interpret prevailing party in RCW 7.28.083(3) as a party who acquires title in an adverse possession action, no matter how small, regardless of the scope of their claim. Under that interpretation, parties could claim wide swaths of land via adverse possession, increasing litigation complexity and costs, prevail as to a relatively small section, and then be entitled to attorney fees. We reject such an interpretation. Instead, we apply the substantially prevailing party framework to RCW 7.28.083(3).

21

ii. *Prevailing Party Determination*

The Bergs argue that ANWI was not the prevailing party because it lost title to substantial portions of Lot 006 through concessions and the prescriptive easement claims should not have been considered in the prevailing party determination. We disagree.

The prevailing party determination is a mixed question of law and fact that we review under an error of law standard. *Emerick*, 189 Wn. App. at 732. We have previously held that RCW 7.28.083(3) did not apply to prescriptive easement claims as they are not actions asserting title to real property. *McColl v. Anderson*, 6 Wn. App. 2d 88, 93, 429 P.3d 1113 (2018). Shortly thereafter, Division One included dicta in an opinion suggested that a party could recover attorney fees incurred on prescriptive easement claims under RCW 7.28.083(3) because prescriptive easements and adverse possession were often treated as equivalents and the elements were the same. *Workman v. Klinkenberg*, 6 Wn. App. 2d 291, 305-06, 430 P.3d 716 (2018).

Division One later "limit[ed] the holding in *Workman* to the facts of that case—when claims involving prescriptive easement also involve claims of adverse possession." *Sw. Suburban Sewer Dist. v. Fish*, 17 Wn. App. 2d 833, 840-41, 488 P.3d 839 (2021). We note that in *Workman* the claimant sought a prescriptive easement over the exact same space that the claimant sought to adversely possess. 6 Wn. App. 2d at 295. Additionally, Division One held, consistent with *McColl*, that a party who asserts solely a prescriptive easement claim is not entitled to attorney fees under that statute. *Sw. Suburban Sewer Dist.*, 17 Wn. App. 2d at 841. We agree with Division One's holding in *Southwest Suburban Sewer District v. Fish*.

Here, the Bergs' "claims involving prescriptive easement also involve claims of adverse possession." *Id.* at 840-41. The Bergs asserted title to a large portion of Lot 006 via adverse

22

possession. This portion appears to include the footbridge, related footpaths, the cabin driveway, and some of the shoreline, which the Bergs now argue that they have a prescriptive easement over.

And all of the prescriptive easement claims stem from the Bergs' use of the cabin and the surrounding curtilage. Indeed, the Bergs contend, on appeal, that the driveways, parking, and the footbridge are "inextricably linked" to the use of the cabin property. Br. of Appellants at 35. Because the prescriptive easements claims are inextricably linked to the adverse possession claims, we hold that the trial court could properly consider the prescriptive easement claims when making its prevailing party determination under RCW 7.28.083(3).

Next, while both parties prevailed to some extent during this action, ANWI substantially prevailed in this action. While the Bergs acquired the cabin and surrounding curtilage, the Bergs failed to acquire large portions of Lot 006 that they claimed. Specifically, the Bergs sought a large portion of West Beach, including the footpaths and the footbridge, which they failed to acquire. The Bergs also sought a large portion of Lot 006 east of the cabin driveway, which they failed to acquire. Finally, the Bergs also claimed prescriptive easements for use of the footpaths, footbridge, cabin driveway, North and South Driveways, shoreline, and parking on West Beach, all of which they failed to acquire. While the amount the Bergs acquired is certainly not insignificant, under these circumstances, we hold that the trial court did not err in determining that ANWI was the prevailing party—as it substantially prevailed.

C.      *Settlement Communications*

The Bergs argue that the trial court erred by considering compromise negotiations in determining the Bergs' liability in violation of the Uniform Meditation Act and ER 408. We disagree.

We review evidentiary rulings for an abuse of discretion. *Brothers v. Pub. Sch. Emps. of Wash.*, 88 Wn. App. 398, 406, 945 P.2d 208 (1997). ER 408 provides as follows:

> In a civil case, evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. . . . This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

In *Humphrey Indus., Ltd. v. Clay St. Assocs., LLC*, the trial court awarded attorney fees against a party for bad faith conduct for, in part, rejecting a pretrial settlement offer and a CR 68 offer of judgment. 170 Wn.2d 495, 508, 242 P.3d 846 (2010). Holding that evidence of conduct in settlement negotiations "is inadmissible to prove liability for or invalidity of the claim or its amount," our Supreme Court reversed. *Id.* Relying on *Humphrey*, Division One rejected the argument that a fee award should be reduced based on unreasonable conduct during settlement, holding "[e]vidence of settlement negotiations of an underlying claim are not admissible as to proving attorney fees for that claim." *Ewing v. Glogowski*, 198 Wn. App. 515, 522, 394 P.3d 418 (2017).

RCW 7.07.030(1) provides that mediation communications are not subject to discovery or admissible in evidence. "'Mediation communication' means a statement, whether oral or in a

record or verbal or nonverbal, that occurs during a mediation or is made for purposes of considering, conducting, participating in, initiating, continuing, or reconvening a mediation or retaining a mediator." RCW 7.07.010(2). And "'Mediation' means a process in which a mediator facilitates communication and negotiation between parties to assist them in reaching a voluntary agreement regarding their dispute." RCW 7.07.010(1). These statutes are part of the Uniform Mediation Act, which has a limited scope. RCW 7.07.020. To that end, the party asserting a privilege always bears the burden of establishing the privilege applies in the given situation. *Sharbono v. Universal Underwriters Ins. Co.*, 139 Wn. App. 383, 418, 161 P.3d 406 (2007).

First, the Bergs failed to establish the mediation privilege applies here. The Bergs only mention the relevant statutes in two paragraphs. They do not cite the record to challenge specific communications. Nor do the Bergs explain whether the unspecified communications fall within the scope of the Uniform Mediation Act. Thus, they have failed to show that the privilege applies here.

Second, in both *Humphrey* and *Ewing*, the courts were considering the underlying conduct for reasonableness or bad faith. Here, the Bergs moved to strike the Weaver declaration containing the compromise negotiations. The trial court granted that motion in part.

In the trial court's attorney fee order, it specified, "This Court did not consider facts presented in the Weaver declaration relating to unsuccessful settlement negotiations and/or allegedly unreasonable conduct relating to settlement negotiations as such is not admissible in determining the amount of the fees requested." CP at 4290 n.1. But the trial court did consider the settlement offers "for the purpose of considering the time, effort, and resources expended in

making such offers in an attempt to resolve this case." CP at 4293. This is distinguishable from *Humphrey* and *Ewing*. The trial court considered the settlement offers solely for considering the time expended during the settlement negotiations, which is permissible under the "other purpose" language in ER 408.

Accordingly, we hold the trial court did not abuse its discretion.

## IV. CONDITIONAL CROSS-APPEAL

ANWI argues that if we remand to the trial court regarding any of the attorney fee issues, we should instruct the trial court to consider the substantive settlement discussions in making its post-judgment fee award. Because ANWI's cross-appeal is conditioned on us ordering remand for attorney fees issues, and we do not do so, we decline to address the ANWI's arguments.

## V. ATTORNEY FEES ON APPEAL

Both parties request attorney fees on appeal under RCW 7.28.083.

We may award fees on appeal under RAP 18.1(a)-(b) if "applicable law grants to a party the right to recover reasonable attorney fees or expenses on review" and the party properly requests it. We may award reasonable appellate attorney fees regarding the adverse possession claim—which on appeal essentially is limited to the attorney fee issue—under RCW 7.28.083(3) in this case. ANWI is the prevailing party on appeal regarding trial court attorney fees.

Determining such an award is equitable and just, we award ANWI reasonable appellate attorney fees regarding the adverse possession issue only, subject to their compliance with RAP 18.1. While the express adverse possession determination was not appealed, the appeal of the attorney fee order implicates the adverse possession determination below.

26

No. 56633-8-II

However, ANWI is not entitled to attorney fees regarding the prescriptive easement issues addressed on appeal under *Sw. Suburban Sewer Dist.*, 17 Wn. App. 2d at 841, and *McColl*, 6 Wn. App. 2d at 93.

CONCLUSION

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Maxa, J.

Cruser, A.C.J.

27